UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA ROBLES,<br><br>                    Plaintiff,<br><br>-against-<br><br>CASPER SLEEP INC., PHILIP KRIM, ANTHONY FLORENCE, DIANE IRVINE, KAREN KATZ, JACK LAZAR, BEN LERER, NEIL PARIKH, and DANI REISS,<br><br>                    Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Maria Robles ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Casper Sleep Inc. ("Casper" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Casper, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed sale of the company to Durational Capital Management LP ("Durational") (the "Proposed Merger").

2. On November 14, 2021, Casper, Marlin Parent, Inc. ("Parent"), and Marlin Merger Sub, Inc. ("Merger Sub"), each of which are subsidiaries of Durational Consumer SPV IV, LP (the "Durational Vehicle"), an investment vehicle managed by Durational, entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with

1

and into Casper and the separate corporate existence of Merger Sub will cease, with Casper continuing as the surviving corporation and a wholly owned subsidiary of Parent.

3.  Upon consummation of the Proposed Merger, each share of Casper common stock will be converted into the right to receive $6.90 in cash ("Merger Consideration"), which represents a total equity value of approximately $286 million.

4.  On December 3, 2021, in order to convince Casper shareholders to vote in favor of the Proposed Merger, Defendants hastily rushed to file a materially incomplete and misleading preliminary proxy statement on Form PREM14A (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.  In particular, the Proxy contains blanks and materially incomplete and misleading information concerning: (i) financial projections for the Company; (ii) the valuation analyses performed by the Company's financial advisor, Jefferies LLC ("Jefferies") in support of its fairness opinion; and (iii) potential conflicts of interest faced by Jefferies.

6.  The Proposed Merger is expected to close in the first quarter of 2022 and the special meeting of Casper shareholders to vote on the Proposed Merger (the "Shareholder Vote") is imminent. Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise her corporate suffrage rights.

7.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Casper shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages

resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Casper is headquartered is this District and its common stock trades on the New York Stock Exchange ("NYSE"), which is also headquartered in this District. Further, Casper hired Latham & Watkins LLP as legal counsel and Jefferies as a financial advisor, both of which are located in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and at all relevant times has been, a holder of Casper common stock.

11. Defendant Casper is a Delaware corporation, with its principal executive offices located at Three World Trade Center, 175 Greenwich Street, 40th Floor, New York, NY 10007. The Company and its subsidiaries design and sell premium sleep products including mattresses, pillows, sheets, and other sleep-centric products. Casper's common stock trades on the NYSE under the ticker symbol "CSPR".

12. Individual Defendant Philip Krim is and/or has been at all relevant times, Chief Executive Officer, Chairman of the Board, and a director of Casper.

13. Individual Defendant Anthony Florence is, and has been at all relevant times, a director of Casper.

14. Individual Defendant Diana Irvine is, and has been at all relevant times, a director of Casper.

15. Individual Defendant Karen Katz is, and has been at all relevant times, a director of Casper.

16. Individual Defendant Jack Lazar is, and has been at all relevant times, a director of Casper.

17. Individual Defendant Ben Lerer is, and has been at all relevant times, a director of Casper.

18. Individual Defendant Neil Parikh is, and has been at all relevant times, a director of Casper.

19. Individual Defendant Dani Reiss is, and has been at all relevant times, a director of Casper.

20. The Individual Defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Casper, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I. Background and the Proposed Merger

21. Casper and its subsidiaries design and sell premium sleep products including mattresses, pillows, sheets, and other sleep-centric products. The Company's head office is located at 175 Greenwich Street, Three World Trade Center, New York, NY. The Company has a full portfolio of engineered sleep products—including mattresses, pillows, bedding, and furniture designed in-house by the Company's award-winning R&D team at Casper Labs. In addition to its e-commerce business, Casper owns and operates sleep shops across North America and its products are available at a growing list of retailers.

22. Based in New York, Durational is an investment firm that invests in high quality consumer companies. Durational approaches its investments with a strategic mindset and focuses on driving long-term value creation through partnership with top tier management teams and actively supporting management to drive operational improvements. The firm was founded in 2017, and its investment professionals have extensive experience investing in the consumer sector.

23. On November 15, 2021, Casper issued a press release announcing the Proposed Merger, which states in relevant part:

**Casper Sleep Inc. to Be Acquired by Durational Capital Management**

NEW YORK--(BUSINESS WIRE) -- Casper Sleep Inc. (NYSE: CSPR) ("Casper" or "the Company") announced today that it entered into a definitive agreement to be acquired by Durational Capital Management LP ("Durational"). Under the terms of the agreement, Casper common stockholders will receive cash consideration of $6.90 per share, representing a 94% premium to the closing share price on November 12, 2021, the last trading day prior to this announcement and a premium of approximately 80% to the 30-day volume weighted average price ending November 12, 2021.

Transaction Details

Casper's Board of Directors has unanimously approved the transaction and recommends that Casper stockholders approve the transaction and adopt the merger agreement. The transaction is expected to close in the first quarter of 2022 and is subject to customary closing conditions, including Casper stockholder approval. Officers and directors of Casper and affiliated investors, who in the aggregate own or control approximately 28% of the Company's outstanding shares, have agreed to vote in favor of the transaction. Upon closing the transaction, Casper will operate as a privately-held company and will remain based in New York.

The transaction is not subject to a financing condition and Durational has committed debt financing led by KKR Credit and Callodine Commercial Finance, LLC.

Casper Sleep CEO Comment

"We are delighted to announce this transaction with Durational Capital Management that creates immediate and substantial value for shareholders, and allows Casper to move forward on strong financial footing," said Casper's Co-Founder and Chief Executive Officer, Philip Krim. "In consultation with outside advisors, Casper's Board of Directors evaluated a range of strategic and financial alternatives over several months and determined, after careful consideration, that the transaction proposed by Durational is superior to all other alternatives available. With a commitment to maximizing value for all shareholders, the Board unanimously supports the offer from Durational and recommends that shareholders approve the transaction. This agreement offers a promising opportunity to realize the highest value for our stockholders while providing Casper with much needed capital to execute on future initiatives to sustain and grow its business."

Durational Capital Management Comment

"We are excited to invest in Casper given its iconic brand, strong growth profile and track record of innovation," said Eric Sobotka, Managing Partner at Durational Capital Management.

Matthew Bradshaw, Managing Partner at Durational Capital Management, added: "With its world-class products and focus on health and wellness, we believe Casper is well-positioned for future success. We look forward to partnering with the Casper team to build on the strength of the brand and to create new opportunities for the company to thrive."

Advisors

Jefferies LLC is serving as financial advisor and Latham & Watkins LLP is serving as legal advisor to Casper Sleep Inc. in connection with the proposed transaction.

> Kirkland & Ellis LLP is serving as legal advisor to Durational Capital Management in connection with the proposed transaction.

\*\*\*

24. The Merger Consideration represents inadequate compensation for the Company's shareholders given it is at less than half the price the Company commanded when it went public less than two years ago. Therefore, it is imperative that the Company's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, necessary for them to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II. The Proxy Omits Material Information

25. On December 3, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

### A. The Misleading Incomplete Financial Projections

26. The Proxy fails to provide material information concerning financial projections of the Company relied upon by the Board in recommending the Proposed Merger, and by Jefferies in performing its financial analyses to issue its fairness opinion. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Jefferies' fairness opinion, Jefferies reviewed financial forecasts, estimates and analyses, relating to the business, operations and prospects of the Company (the "Casper Projections"). Proxy at 41.

27. First, the Proxy, omits critical financial projections for the Company, specifically the net income/loss projections and the "June Long-Range Plan" projections that were provided to the Board and Jefferies. The Defendants elected to summarize the Company's financial projections, but they excised and failed to disclose the net income/loss projections and the "June Long-Range Plan" projections. Not only is net income/loss a critical metric for shareholders evaluating the financial standing of a company, but it is also a GAAP metric that allows direct comparison between different enterprises.

28. By disclosing certain projections in the Casper Projections and withholding, *inter alia*, the net income/loss projections, Defendants render the projection table on page 47 of the Proxy materially incomplete and provide a misleading valuation picture of Casper.

29. Further, with respect to the "September Long-Range Plan" the Proxy fails to disclose: (i) the line items underlying Adjusted EBITDA, EBITDA (net of SBC), NOPAT, Unlevered Cash Flow from Operations, and Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Proxy at 47.

30. The omission of this information renders the Casper Projections disclosed by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a).

31. When a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that stockholders exercise their corporate voting rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

32. Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

33. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Jefferies, but have omitted the "June Long-Range Plan", the crucial net income/loss projections, line items and reconciliations. Thus, Defendants' omission renders the Casper Projections disclosed on page 47 of the Proxy misleading.

B. <u>The Misleadingly Incomplete Summary of Jefferies' Fairness Opinion</u>

34. The Proxy describes Jefferies' fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information in citing Jefferies' fairness opinion and the valuation analyses among the "material" factors the Board considered in making its recommendation to Casper shareholders. Proxy at 38. However, the

summary of Jefferies' fairness opinion and analyses provided in the Proxy fails to include key multiples and inputs and assumptions underlying the analyses. Without this information, as described below, Casper shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on the Proposed Merger. *See* Proxy at 43 ("**Considering the data below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of Jefferies' financial analyses**."). This omitted information, if disclosed, would significantly alter the total mix of information available to Casper shareholders.

35. With respect to Jefferies' *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the terminal values; (ii) the inputs and assumptions underlying the discount rates of 16.25% to 17.75%; (iii) the inputs and assumptions underlying the perpetuity growth rates of 2% to 4%; (iv) the range of implied enterprise values for Casper; (v) Casper's weighted average cost of capital utilized in the analysis; and (vi) Casper's projected net debt as of December 31, 2021 utilized in the analysis. Proxy at 43.

36. These key inputs are material to Casper's shareholders, and their omission renders the summary of Jefferies' *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a*

> *change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.*

*Id.* at 1577-78 (emphasis added).

37. In other words, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Without such undisclosed information, Casper shareholders cannot evaluate for themselves whether the financial analyses performed by Jefferies were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Merger. Full disclosure of the omissions identified above is required in order to ensure that shareholders can fully evaluate the extent to which Jefferies' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Merger.

38. Without the above-omitted information, Casper shareholders are misled as to the reasonableness or reliability of Jefferies' analysis, and are unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Discounted Cash Flow Analysis* misleadingly incomplete.

39. With respect to Jefferies' *Selected Public Companies Analysis*, the Proxy fails to

disclose: (i) the individual multiples and metrics observed for the companies selected as comparable to Casper; (ii) the enterprise values of the selected companies; and (iii) the inputs and assumptions underlying the selected Adjusted EBIDTA multiples range of 7.0x to 8.75x. Proxy at 43-44.

40. With respect to Jefferies' *Premiums Paid Analysis*, the Proxy fails to disclose: (i) the premiums of each transaction; and (ii) the selected all cash transactions observed. Proxy at 45.

### C. Material Omissions Concerning Jefferies' Conflicts of Interest

41. The Proxy fails to disclose material information concerning potential conflicts of interest faced by Jefferies.

42. The Proxy incorporates Jefferies' fairness opinion by reference, which sets forth that Casper has agreed to pay Jefferies for its financial advisory services in connection with the Proposed Merger an aggregate fee based upon a percentage of the transaction value of the Proposed Merger, $1.25 million of which became payable upon delivery of Jefferies' opinion to the Board and the remainder of which is payable contingent upon the closing of the Proposed Merger.

43. The Proxy, however, has a blank for the overall fee Jefferies will receive upon closing of the Proposed Merger.

44. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection and implementation of strategic alternatives.

45. Without full and fair disclosure of the material information set forth above, Casper shareholders should not be asked to vote on the Proposed Merger.

46. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of

the foregoing material information prior to the upcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote on the Proposed Merger and is threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

51. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants

reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Casper; (ii) valuation analyses performed by Jefferies; and (iii) potential conflicts faced by Jefferies.

52. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders, although they could have done so without extraordinary effort.

53. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Jefferies reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Jefferies, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Jefferies' analyses in connection with

their receipt of the fairness opinion, question Jefferies as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

55. Casper is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

56. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Casper within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

61. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

65. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

65. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

66. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

67. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

17

Dated: December 9, 2021                    **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*
